UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Frederick George Kriemelmeyer,** | Civil No. 09-CV-1231 (ADM/SRN) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| **B.O.P. and Mike Babcock, Acting Warden, FMC - Rochester** | |
| Respondents. | |

___

Frederick George Kriemelmeyer, pro se, Federal Medical Center, PMB 4000, Rochester, MN 55903-4000.

Gregory G. Brooker and Chad A. Blumenfield, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondents.

___

SUSAN RICHARD NELSON, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Petitioner Frederick George Kriemelmeyer's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons discussed below, the Court recommends that the Petition be denied with prejudice.

I.   INTRODUCTION

Petitioner Frederick Kriemelmeyer, an inmate at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"), filed this Petition for a Writ of Habeas Corpus on May 20, 2009. Petitioner contends that the federal Bureau of Prisons ("BOP") improperly applied the Second Chance Act of 2007, Public Law 110-199, ("SCA") in recommending

1

Petitioner for 120-180 days of Residential Reentry Center ("RRC")[1] placement immediately prior to his projected release date. Petitioner now argues that Respondent erred in failing to grant him 12 months of RRC time as allowed under the SCA. Petitioner asserts that the BOP guidelines are unlawful because they implicitly deny the BOP discretion to recommend RRC placements greater than six months. Petitioner acknowledges that he has not exhausted available administrative remedies, but argues that the Court should excuse him from the exhaustion requirement because it would "moot" his petition. For the reasons discussed below, this Court recommends that this Petition be denied.

## II. BACKGROUND

Petitioner is a federal prisoner incarcerated at FMC Rochester, Minnesota. Petitioner was convicted of Fraud and False Statements in violation of 26 U.S.C. § 7206(1) in the Western District of Wisconsin. He was sentenced to 36 months in prison and one year of supervised release. Respondent projects Petitioner's release date to be June 14, 2010 with Good Conduct Time release. The BOP recommended that Petitioner receive 120-180 days in an RRC prior to his projected release. (Pet. Ex. 2.) Petitioner challenges that recommendation. (Pet. at 5.)

The SCA allows the BOP to grant an inmate up to 12 months of his sentence in a RRC. See 18 U.S.C. § 3624(c)(1). Petitioner requested an individual assessment for a release plan pursuant to the SCA. His Unit Team conducted a review for RRC placement on December 10, 2008 and recommended that Petitioner receive 120-180 days of RRC placement. (Decl. of

---

[1] Until recently, RRCs were known as Community Corrections Centers ("CCCs") or halfway houses.

Angela Buege, Ex. B.) This recommendation was made after analyzing the five factors enumerated in 18 U.S.C. § 3621(b).[2] (Id.)

On December 26, 2008, Petitioner filed an Inmate Request to Staff asking for an explanation of his Unit Team's RRC recommendation. (Pet. Ex. 1.) On January 6, 2009, the Unit Team explained that the recommendation was made after considering: (1) the five factors enumerated in 18 U.S.C. § 3621(b); (2) his family and community ties, specialized job skills, financial resources, established release residence, and life skills; and (3) his conviction of Escape

---

[2] 18 U.S.C. § 3621(b) provides that: "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to imprisonment was determined to
    be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person."

of Criminal Arrest in 1996. (Pet. Ex. 2.) The Unit Team concluded that 120-180 days of RRC placement would allow Petitioner to successfully re-integrate into the community. (Id.)

On February 12, 2009, Petitioner filed a request for Administrative Remedy to the Warden of FMC Rochester, asking for additional RRC time. (Pet. Ex. 4.) The Warden denied Petitioner's request on February 27, 2009. (Pet. Ex. 7.)

On March 9, 2009, Petitioner filed an appeal with the Regional Office of the BOP. (Pet. Ex. 8.) The Regional Office's original deadline for response was April 8, 2009. But, the Regional Office obtained an extension from the Central Office (as allowed under the SCA) until May 8, 2009. (Decl. of Angela Buege at ¶ 12.) Petitioner's regional appeal was denied on April 15, 2009—which was seven days after the original deadline, but 23 days prior to the extended deadline. (Pet. Ex. 13.)

When Petitioner did not receive a response from the Regional Office by the original April 8, 2009 deadline, he assumed that the Regional Office had failed to issue a timely response. (Pet. at page one of supplemental two pages.) Based on this assumption, Petitioner filed an appeal to the BOP's Central Office on April 9, 2009. (Pet. Ex. 10.) The Central Office rejected his appeal on May 2, 2009, because Petitioner had not exhausted his administrative remedy by receiving a final response from the Regional Office. (Pet. Ex. 14.) The Central Office informed Petitioner that he could resubmit his appeal in proper form within 15 days of the rejection notice. (Id.) When Petitioner received his official denial from the Regional Office on April 15, 2009, he did not resubmit his appeal to the Central Office. Instead, he commenced this action in district court on May 20, 2009. (Pet. at 1.)

Petitioner argues that the BOP erred in its RRC recommendation because he is entitled to 12 months at an RRC under the SCA. (Pet. at 3.) Petitioner further alleges that the BOP was

4

"non-responsive" to his demands and that he should be excused from further exhaustion of his administrative remedies as they would "moot" his petition. (Pet. at 3, page two of supplemental two pages.) Alternatively, Petitioner relies on a District of New Jersey case to argue that this Court should find the BOP's guidelines unlawful and, therefore, grant his Petition for a Writ of Habeas Corpus. (Pet. Reply Br. at 2–4.)

Respondent contends that this Court should deny this Petition for a Writ of Habeas Corpus because: (1) Petitioner failed to exhaust his administrative remedies and (2) the BOP acted properly in recommending 120-180 days of RRC placement for Petitioner. (Gov't Reply Br. at 2.)

## III. DISCUSSION

### A. The Second Chance Act

The BOP has discretion to determine when or whether an inmate is to be placed in a RRC. See 18 U.S.C. § 3624(c). The SCA was signed into law on April 9, 2008, and it became effective immediately. See Pub. L. No. 110-199. The SCA provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The SCA also requires the BOP to issue regulations designed to ensure that RRC assignments are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6).

To comply with this statute, the BOP adopted a set of interim rules, effective October 21, 2008. 28 C.F.R. §§ 570.20–22. Pursuant to 18 U.S.C. § 3624(c) and its corresponding rules, the

BOP must determine "on an individual basis" how much time, if any, each federal prisoner should spend at an RRC.[3] When making RRC determinations for inmates, the BOP considers: (1) the resources of the RRC facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the inmate; (4) any statement by the sentencing court concerning the purposes of the prison sentence; and (5) any pertinent policy statement issued by the U.S. Sentencing Commission. See 18 U.S.C. § 3621(b). Orders, recommendations, or requests by a sentencing court for RRC placement "shall have no binding effect" on the BOP's authority. See id.

   **B. Exhaustion of Administrative Remedies**

The Court should deny Petitioner's request because he failed to exhaust his administrative remedies. When grievance procedures exist, a federal prisoner must exhaust available remedies within the correctional system before seeking extraordinary relief in federal court. United States v. Chappel, 208 F.3d 1069, 1069–70 (8th Cir. 2000); Mesner v. Morrison, No. 06-2118 (ADM/SRN), 2006 WL 3080914, at *2 (D. Minn. Oct. 27, 2006).

The BOP's administrative remedy program addresses prisoner confinement concerns. 28 C.F.R. § 542.10. An inmate must first seek informal resolution of the grievance or, if there is no resolution, present the complaint to the facility's warden. 28 C.F.R. § 542.13. The warden must issue a response within 20 days of receipt of the complaint, but he may extend the response time by 20 days. 28 C.F.R. § 542.18. The prisoner may next appeal an unsatisfactory response from the warden to the BOP Regional Director. Id. The Regional Director must respond within 30 days of receipt of the complaint, but he may extend the response time by 30 days. Id. Finally,

---

[3] 28 C.F.R. § 570.22 provides that "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

6

the prisoner may appeal the Regional Director's response to the BOP's Central Office. Id. The Central Office must respond within 40 days of receipt of the complaint, but may extend the response time by 20 days. Id.

If time is extended at any level of the BOP process, then the BOP must inform the inmate of the extension in writing. Id. If, at any point a response is not received by the inmate within the time allotted—which includes the time for extension—then the inmate may consider his request denied at that level. Id. Once the Central Office makes a final determination on a prisoner's complaint, then it is deemed "exhausted" and may be subject to district court review.

Petitioner did not exhaust his administrative remedies. He first requested additional RRC time from his warden on January 29, 2009, which was denied. (Pet. Ex. 4, 5, 6, 7.) Thereafter, he appealed to the Regional Office, whose response was initially due on April 8, 2009. (Pet. Ex. 8.) When Petitioner did not receive a response by the Regional Office by April 8, 2009, he immediately appealed to the Central Office. (Pet. Ex. 10.) The Central Office rejected his appeal because he did not provide a copy of the response from the Regional Office. (Pet. Ex. 14.) The Central Office informed Petitioner that he could resubmit his appeal in proper form within 15 days of the rejection notice. Id. The Regional Office had, in fact, obtained an extension until May 8, 2009. (Pet. Ex. 12.) The Regional Office officially denied Petitioner's complaint on April 15, 2009. Id. Once Petitioner obtained this response from the Regional Office, he chose not to re-appeal to the Central Office. Id. Instead, he filed this Complaint in federal court.

Petitioner relies heavily on Strong v. Schultz, 599 F.Supp.2d 556 (D.N.J. 2009), in arguing that the Court should grant him a waiver of administrative remedy exhaustion. (Pet. at 7, page two of supplemental two pages.) In Strong, the BOP gave the petitioner a six-month RRC placement, largely because he was diagnosed with a terminal illness. Id. at 558. The petitioner

sought a 12-month placement, but failed to exhaust his administrative remedies. Id. The district court declined to deny the petitioner's request for a Writ of Habeas Corpus for failure to exhaust. Id. The court remanded the case to the BOP to consider granting the inmate additional RRC placement time. Id.

Petitioner's reliance on Strong is misplaced. In Strong, the district court excused the prisoner from exhausting the BOP remedies because he had already exhausted similar claims. Id. at 561. The district court held that the purposes of exhaustion would not be served by requiring a second round of administrative exhaustion that would moot his SCA claims through "no fault of his own." Id. Petitioner's complaint is unlike Strong as he admits that he has not exhausted his claims nor has he exhausted any similar claims. (Pet. at 3.)

Additionally, Petitioner expressly chose to avoid the final step of the administrative process. The Central Office specifically instructed Petitioner to re-submit his complaint after receiving a final determination from the Regional Office. Now, after the fact, Petitioner attempts to rebut this mistake by relying on Strong and argues that any further exhaustion would moot his claims. (Pet. at 3.) However, Petitioner's decision to seek review with this Court, prior to administration exhaustion, necessarily dooms his petition. Petitioner's choice contradicted the established law in this Circuit that requires exhaustion of administrative remedies prior to this Court's review. Therefore, based on Petitioner's failure to exhaust his administrative remedies, Mr. Kriemelmeyer's petition should be denied.

### C. Merits of Petitioner's Claims

Even if Petitioner had successfully exhausted his administrative remedies, this Court would still deny his petition. Petitioner's request for a Writ of Habeas Corpus must fail on the

merits because: (1) the BOP has discretion in making RRC recommendations and (2) the Eighth Circuit has held that the BOP's guidelines are proper.

The BOP has discretion in recommending an RRC stay for federal prisoners. See 18 U.S.C § 3624(c); Hosna v. Groose, 80 F.3d 298, 303 (8th Cir.1996), cert. denied, 519 U.S. 860 (1996). The SCA and corresponding rules outline the maximum time that a prisoner can spend at an RRC—not more than 12 months—but they do not promulgate a minimum time that a prisoner must spend at an RRC. See 18 U.S.C. § 3624(c)(1); 28 C.F.R. § 570.21; see also Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008) (quoting 18 U.S.C. § 3624(c)(1); Stewart v. Cruz, No. 08-4380 (ADM/RLE), 2008 WL 3893600, at *2 (D. Minn. Aug. 20, 2008)). Federal inmates do not have a constitutionally protected right to an RRC placement and no statutory authority requires transfer of an inmate to an RRC. See Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004) ("18 U.S.C. § 3624(c) . . . only obligates the BOP to facilitate the prisoner's transition from the prison system . . . ."); McFadden v. Morrison, No. 06-1106 (MJD/JSM), 2006 WL 2583417, at *3 (D. Minn., Sept. 6, 2006).

The SCA requires the BOP to individually assess an inmate's proper RRC placement time. Miller, 527 F.3d at 758. In making this determination, the SCA instructs the BOP to consider: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the prisoner's sentence; and (5) any pertinent policy statement issued by the United States Sentencing Commission. See 18 U.S.C. § 3621(b). The BOP need only to conduct a "good faith" analysis of these factors. Miller, 527 F.3d at 758.

Petitioner challenges the BOP's 120-180 day RRC recommendation because it falls short of the 12-month maximum allotment and because the BOP failed to consider his individual

9

circumstances. (Pet. Reply Br. at 2–4.) But, the BOP properly assessed Petitioner's situation and justifiably used its discretion in recommending 120-180 days of RRC placement. Indeed, Petitioner's Unit Team advised him that their recommendation was based on his documented family and community ties, established release residence with his daughter, specialized job skills, financial resources, and life skills. (Pet. Ex. 2.) Additionally, the Unit Team considered the two-point sentencing enhancement Petitioner received for obstruction of justice and the fact that Petitioner was convicted of Escape of Criminal Arrest in 1996. Id. The BOP considered the SCA's factors and its RRC placement recommendation should not be disturbed.

The Eighth Circuit requires the BOP to conduct a "good faith" analysis in making its RRC recommendation. Miller, 527 F.3d at 758. Here, the BOP conducted an individualized assessment and the BOP justifiably used its discretion. Accordingly, the Court defers to the BOP's determination.

Moreover, the BOP properly applied its guidelines to Petitioner. On April 14, 2008, the BOP issued an interim guidance memorandum ("April Memo") to implement the SCA. See Miller, 527 F.3d at 756; (Decl. of Bernetta Miller, Ex. A, April Memo.) The April Memo outlined changes in RRC determinations, including the ability of BOP employees to increase a prisoner's RRC placement to 12 months. (Bernetta Miller Decl., Ex. A, April Memo.) The April Memo further directed the BOP staff to conduct individualized assessments for inmates 17-19 months prior to their projected release dates and instructed the BOP staff to "approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement." (Id. at 4 (emphasis in original).)

Petitioner challenges the legality of the April Memo. (Pet. Reply Br. at 2–4.) Petitioner contends that the following section of the April Memo unlawfully establishes a presumptive six-month ceiling on RRC placements:

> [P]re-release RRC needs can usually be accommodated by placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(Decl. of Bernetta Miller, Ex. A, April Memo.) In <u>Strong v. Schultz</u>, the New Jersey District Court held that the April Memo's requirement that the BOP staff obtain Regional Office approval for RRC placements of more than six months was inconsistent with the SCA. 599 F.Supp.2d 556, 563 (D.N.J. 2009). Petitioner argues that this Court should follow the precedent established by <u>Strong</u> and hold that the April Memo was unlawfully applied to him. (Pet. Reply Br. at 2–4.)

The Eighth Circuit, however, has adopted the SCA and its implementing memorandum. <u>See</u> <u>Miller</u>, 527 F.3d at 756; <u>Taylor v. Jett</u>, No. 09-1632 (RHK/JJK), 2010 WL 502783, at *2 (D. Minn. Feb. 5, 2010) ("[T]his Court concludes that the April 2008 Memo, and subsequent actions of the BOP, conform to the requirements of the SCA."). In <u>Miller</u>, inmates challenged a BOP guideline that provided that placement in RRC beyond 180 days was "highly unusual, and only possible with extraordinary justification." <u>Id.</u> at 754, 757. The Eighth Circuit held that the applicable BOP guideline did not conflict with the SCA and that the BOP guideline was properly administered. <u>Id.</u> at 757. While the court's ruling in <u>Miller</u> related to a slightly different BOP guideline, its holding is applicable in the present case. Accordingly, this Court finds that the BOP properly relied on its guidelines in making Petitioner's RRC recommendation.

Petitioner's Unit Team properly considered his placement on an individualized basis and considered the criteria established under the SCA. The Unit Team determined that 120-180 days of RRC placement was sufficient to satisfy his needs, and the Petitioner has not shown that the BOP acted improperly in arriving at that determination. Thus, the Court concludes that the BOP's determination was proper and Mr. Kriemelmeyer's Petition should be denied on the merits.

**RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be DENIED; and

2. This action be DISMISSED WITH PREJUDICE.


Dated: March 24, 2010                                         s/ Susan Richard Nelson
                                                              SUSAN RICHARD NELSON
                                                              United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 8, 2010** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.